IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Sharon Yvonne Ross, | C/A No.: 3:22-cv-03043-MGL-PJG |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| Billy R. Oswald; Oswald & Burnside, LLC; Billy R. Oswald Law Firm, LLC; and Oswald Realty Inc.; | |
| Defendants, | |

Plaintiff Sharon Yvonne Ross (hereinafter "Plaintiff"), complaining against Defendants Billy R. Oswald (hereinafter "Defendant Oswald"), Oswald & Burnside, LLC (hereinafter "Defendant Oswald & Burnside"), Defendant Billy R. Oswald Law Firm (hereinafter "Defendant Oswald Law Firm"), LLC, and Oswald Realty, Inc. (hereinafter "Defendant Oswald Realty") (together "Defendants"), would respectfully show unto this Court as follows:

**PARTIES AND JURISDICTION**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Human Affairs Law of the State of South Carolina for sexual harassment and retaliation.

2. Plaintiff is a citizen and resident of the County of Lexington, State of South Carolina.

3. Defendant Oswald is an attorney licensed to practice in South Carolina whose place of business is located in Lexington County. Defendant Oswald conducted his business through several LLC's and corporations, including Oswald & Burnside, LLC, Billy

1

R. Oswald Law Firm, LLC, and Oswald Realty Inc., all South Carolina entities with the place of business in Lexington County, South Carolina.

4. Upon information and belief, Defendant Oswald is a member, shareholder, and/or owner of the above-referenced South Carolina entities, and he acted as an agent of those entities in all of his actions complained of by the Plaintiff.

5. Plaintiff was jointly employed by and performed worked for all named Defendants. Defendants are employers within the meaning of Title VII, having at least 15 employees paid either through ordinary means or "under the table" for work performed and services delivered.

6. Plaintiff's claims arise under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(t) and 28 U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

7. On or about November 24, 2020, Plaintiff filed Charges of Discrimination with the South Carolina Human Affairs Commission alleging sex discrimination and retaliation against the Defendants.

8. On or about March 14, 2022, the Equal Employment Opportunity Commission issued Notice of Right to Sue, which Plaintiff's counsel received on or about March 16, 2022.

9. Counsel for Plaintiff and the Defendants entered into tolling agreements in an effort to attempt an informal resolution, the most recent tolling agreement set to expire on September 11, 2022.

10. Plaintiff has fully exhausted all of her administrative remedies, and this action is timely filed.

## **FACTUAL ALLEGATIONS**

11. Defendant Oswald practices law through Defendants Oswald Law Firm and Oswald & Burnside.

12. Defendant operates a rental business with properties in his name and in the name of his wife. Plaintiff performed work for Oswald Realty Inc. and Defendant Oswald in his personal capacity regarding his rental business.

13. Defendant Oswald owns various other business ventures, including several entities which solicit and file claims for unemployment benefits for clients, including Oswald Stimulus Aid, LLC [sic]; LB Stimulus Aid, LLC; Oswald & Bethel Stimulus Aid, LLC; and Oswald Problem Solivers [sic], LLC. Plaintiff did not perform any work for these entities; however, their operations were part of Defendant Oswald's law practice and their activities occurred, at least in part, within the law firm's office.

14. Plaintiff began working for Defendant Oswald and his various business entities in 2003 as a part-time office assistant to help complete tasks.

15. On or about 2009 or 2010 Plaintiff became a full-time employee. Plaintiff's jobs included secretarial work, reception, intake, filing, medical record requests, paralegal work, and collecting rent for Defendant's rental business, among others. Defendant Oswald referred to me as a paralegal.

16. As Plaintiff became proficient in her duties, Plaintiff advanced to more responsibilities, and eventually Defendant Oswald began referring to her as the office

manager, though another employee Diane Toole, handled many duties of an office manager, such as employees' timekeeping.

17.     Throughout Plaintiff's employment with Defendant Oswald, he subjected her to a hostile work environment due to sexual harassment.

18.     On multiple occasions, Plaintiff experienced physical assault including his grabbing her breasts and by placing his hand near her vagina and making inappropriate gestures, the most recent such occurrence being on or about October to November 2019.

19.     Defendant Oswald frequently had prostitutes perform sexual acts on him in the back office and sometimes in the conference room, both during work hours and afterward; some were clients, and some were tenants in his rental properties. Plaintiff knew this was going on because the individuals were known prostitutes coming in for no legitimate reason to spend time with Defendant Oswald.

20.     Plaintiff and other employees could overhear moans and other noises of their rendezvous from adjacent offices; and Plaintiff inadvertently observed a woman performing sexual acts on Defendant Oswald through a cracked door. Defendant Oswald's nephew, Jamie Oswald, walked in on Defendant Oswald in one such instance and told other employees about what he observed. Defendant Oswald's activities with prostitutes at the office has been going on as long as Plaintiff's employment with Defendants.

21.     Upon information and belief, Defendant Oswald had prostitutes perform sexual acts on him at the office as recently as April and May 2020.

22. Plaintiff knows that many of the women who performed sexual services for Defendant Oswald were clients and/or tenants of his because Plaintiff worked on their cases.

23. In one instance, at Defendant Oswald's directive, Plaintiff was instructed to go to a hotel where one of the women stayed and pay her hotel bill.

24. Defendant Oswald solicited his female employees for sexual services.

25. In late summer of 2018 or 2019, after Defendant Oswald had taken a group of female employees to lunch, Plaintiff walked in on a conversation with them, Defendant Oswald told the women that they were "crazy" for not performing sexual acts on him several times a week, as that would get them a raise of $10,000 or $15,000 a year. Plaintiff said, at that time, "why not just give us a raise?" He did not respond and acted like he didn't hear her.

26. Defendant Oswald exposed his genitals to Plaintiff and others in the workplace.

27. Defendant Oswald frequently referred to the need for his female employees to "take care of him," which everyone knew meant to help him satisfy his sexual desires.

28. Plaintiff became increasingly nervous when Defendant Oswald would come into her office and close the door because Plaintiff did not want anyone to think she was having sexual relations with him.

29. In January or February 2020, Defendant Oswald came in Plaintiff's office and closed the door. Plaintiff had unexpected expenses due to the need for a car repair. Plaintiff said to Defendant Oswald that it would be nice to get any bonus she was due from settling cases so she could pay for the repair. Defendant Oswald said, "I am not

giving out any bonuses. You all make more than enough money. You just need to take care of me." Plaintiff tried to change the subject and redirect Defendant Oswald.

30.     In conjunction with the sexual harassment, Defendant Oswald frequently insulted employees. Defendant Oswald would often refer to employees as "fucking idiots." Defendant Oswald would very frequently call female employees and clients "bitches."

31.     Plaintiff would often tell Plaintiff to get "my fat ass in here." Defendant would often refer to his law partner, Kelly Burnside, as a "stupid greedy bitch." Whenever Defendant Oswald became angry or frustrated, he would begin these insults. He would hurl insults about employees to other employees. This was a common occurrence.

32.     Plaintiff notice when Defendant Oswald became angry or faced any kind of disagreement with a female employee, he would frequently say: "I am your king. I am your god. You will do what I tell you to do as long as you work here, and you won't win," and the like. Plaintiff heard these remarks from Defendant Oswald.

33.     On January 10, 2014, Plaintiff presented Defendant Oswald with a letter asking him to stop verbally abusing her and to stop demeaning her character. Plaintiff also told him in the letter that she was quite disturbed by all of the sexual talk, innuendo, and gossip that goes on throughout the office.  After presenting him with the letter Defendant Oswald tore it up and got mad, but never addressed Plaintiff's concerns.

34.     As the COVID-19 pandemic Defendant Oswald became occupied with a scheme to make money by applying for unemployment benefits and CARES Act funds for people. Defendant Oswald created several new business entities for this venture. He moved employees from working on his normal legal work to working on this unemployment benefits project and he threatened anyone who refused with termination.

6

35.     Defendant Oswald asked Plaintiff to help with his unemployment benefits project but Plaintiff declined because of cases that needed to be settled and because she felt there something wrong about his unemployment benefits venture.

36.     In April 2020, Defendant Oswald told all the firm employees to file for unemployment benefits but said they should continue to work from home. Kelly Burnside, Defendant Oswald's law partner, filed Plaintiff's unemployment benefits claim. Plaintiff found it strange that Defendant Oswald expected the employees to continue working for him while they were to draw unemployment.

37.     Plaintiff did not feel she could leave her employment with Defendants at that time. Because of the nature of her job, Plaintiff could not work from home, as It was necessary to be in the office, where client files were located, and to continue to meet with clients in person. While Plaintiff was uncomfortable continuing to work for Defendants, she felt she owed it to clients to make sure their cases were properly handled and that their settlements were finalized.

38.     On June 2, 2020, Defendant Oswald came into her office. He told Plaintiff that he had opened a new law firm. Plaintiff asked for a raise, as she had not received one since 2014. Defendant Oswald told Plaintiff  "You haven't earned a raise. You don't deserve it. The only thing you're good for is laying on your back." Plaintiff understood this to be a sexual reference. He continued to call her names including but not limited to "ungrateful bitch." Plaintiff continued to pack her things and leave the office.

39.     Plaintiff could no longer endure Defendant Oswald's sexual harassment and she was forced to terminate her employment with the Defendants.

**FOR A FIRST CAUSE OF ACTION**
Against All Defendants
(Title VII: Sexual Harassment)

40. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

41. On numerous occasions, Defendant Oswald made inappropriate comments and gestures, and touched Plaintiff in inappropriate ways. The comments, gestures, and sexual advances were unwanted and unwelcome.

42. The harassment was constant and so severe as to create a hostile work environment. Defendant Oswald also made comments to Plaintiff and other female employees indicating that they would receive preferential treatment and compensation in exchange for sexual services, which is quid pro quo harassment.

43. Plaintiff suffered severe emotional distress as a result of sexual harassment.

44. Defendant Oswald's actions toward Plaintiff were willful, malicious, and intentional.

45. As a direct result and consequence of this sex discrimination, Plaintiff has and will suffer economic damages, including back pay, front pay, fringe benefits and has and will suffer compensatory damages, including emotional distress, mental anguish, and anxiety.

46. As a further direct and consequence, Plaintiff is entitled to back pay, reinstatement, front pay, fringe benefits, compensatory damages, punitive damages, interests, and attorney's fees and costs.

**FOR A SECOND CAUSE OF ACTION**
Against All Defendants
(Title VII Retaliation)

47. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

48. Plaintiff objected to being sexually harassed by Defendant Oswald.

49. Defendant Oswald targetted Plaintiff for spurning his advances, including denying raises, increasing harassment and belittling comments, and ultimately forcing her to separate from her employment.

50. As a direct result and consequence of said retaliation, Plaintiff has and will suffer economic damages, including back pay, front pay, fringe benefits and has and will suffer compensatory damages, including emotional distress, mental anguish, and anxiety.

51. As a further direct and consequence, Plaintiff is entitled to back pay, reinstatement, front pay, fringe benefits, compensatory damages, punitive damages, interests, and attorney's fees and costs.

**FOR A THIRD CAUSE OF ACTION**
Against All Defendants
(Intentional Infliction of Emotional Distress)

52. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

53. Defendants intentionally or recklessly inflicted severe emotional distress upon Plaintiff as alleged in detail above.

54. Defendants' conduct was so extreme and outrageous that it exceeds all possible bounds of decency and is furthermore atrocious and utterly intolerable in a civilized community.

55. The actions of Defendants have caused Plaintiff to suffer severe emotional distress.

56. The emotional distress suffered by Plaintiff is so severe that no reasonable person could be expected to endure it.

57. Plaintiff is entitled to recover in this action actual damages from Defendants sufficient to compensate her for her emotional distress.

58. Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined by a jury sufficient to deter Defendants and others from engaging in such outrageous conduct in the future.

### FOR A FOURTH CAUSE OF ACTION
Against All Defendants
(South Carolina Payment of Wages Act)

59. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

60. Plaintiff asserts this claim for damages and declaratory relief under the South Carolina Payment of Wages Act ("Act"), S.C. Code Ann. § 41-10-10, *et seq.*

61. Pursuant to the Act, Plaintiff brings this action to recover unpaid wages and monetary damages owed for labor rendered or any compensatory benefits due, including vacation, holiday, sick leave, or any other payments due to Plaintiff under any employer policy or employment contract.

62. At all times relevant herein, Defendants were jointly "employers" of the Plaintiff as defined in S.C. Code Ann. § 41-10-10(1).

63. All monies owed to Plaintiff by the Defendants constitute "wages" as defined in S.C. Code Ann. § 41-10-10(2).

64. Defendants deducted wages from Plaintiff without providing seven days advance written notice, failed to provide a statement of all deductions from wages, failed to pay Plaintiff all wages when due, and failed to pay Plaintiff wages by the next payday following their separation from employment.

65. Plaintiff worked for Defendants in April and May 2020, and separated from employment on June 2, 2020, during which time Defendants did not pay Plaintiff.

66. Defendants' failure to pay Plaintiff all wages due is willful and without justification.

67. Plaintiff is entitled to recovery in the amount equal to three times the full amount of his unpaid wages, prejudgment and post judgment interest, and costs and reasonable attorney's fees incurred in prosecuting this action pursuant to Section 41-10-80(c).

## FOR A FIFTH CAUSE OF ACTION
Against All Defendants
(Battery)

68. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

69. Defendant Oswald made unwanted and forcible contact upon Plaintiff on numerous occasions throughout her employment with Defendants, including occurrences in which he would grab her breasts and by placing his hand near her vagina and making inappropriate gestures.

70. Defendant Oswald's unwanted and forcible touching of Plaintiff caused her emotional distress.

71. Plaintiff is entitled to recover in this action actual damages from Defendants sufficient to compensate her for her emotional distress.

72. Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined by a jury sufficient to deter Defendants and others from engaging in such outrageous conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants for back pay,

front pay, fringe benefits, interest, compensatory damages, punitive damages, treble damages for unpaid wages, liquidated damages, attorneys' fees and costs in amounts determined by this court and/or the jury.

Respectfully submitted,

**BURNETTE SHUTT & McDANIEL, PA**

s/ Jack E. Cohoon
Jack E. Cohoon (Bar No. 9995)
912 Lady Street, Second Floor
PO Box 1929
Columbia, South Carolina 29202
Telephone: (803) 904-7914
Fax: (803) 904-7910
jcohoon@burnetteshutt.law

**ATTORNEY FOR PLAINTIFF**

Columbia, South Carolina

September 9, 2022